# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONALD SCHROEDER,

    Plaintiff,

  v.                                                  Case No. 10-C-0232

DOUG DRANKIEWICZ and KARL HELD,

    Defendants.

## DECISION AND ORDER

Plaintiff Ronald Schroeder, who is proceeding pro se, filed a complaint against the defendants in Waukesha County Circuit Court regarding their involvement in his attempt while in prison to mail cards to his minor daughters. The defendants filed a notice of removal to the Eastern District of Wisconsin on March 18, 2010. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). On April 14, 2011, the matter was reassigned to this court upon the consent of the parties to the exercise of jurisdiction by the magistrate judge.

Upon removal, the plaintiff's complaint was screened and he was allowed to proceed on three constitutional claims: (1) that the defendants deprived him of his First Amendment right to communicate with his daughters; (2) that the defendants deprived him of his Fourteenth Amendment right to familial relations; and (3) that the defendants retaliated against him for filing complaints against them. The plaintiff was also allowed to

proceed on three state law claims against the defendants: (1) tortious interference with a court order; (2) conspiracy to intentionally deprive the plaintiff of his court-ordered rights; and (3) negligent failure to investigate the court order before depriving the plaintiff of his constitutional right to have contact with his daughters. Now pending are the plaintiff's motion for partial summary judgment (Docket #20) and the defendants' motion for summary judgment (Docket #22).

## **SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Rule 56 requires that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4).

## **RELEVANT UNDISPUTED FACTS[1]**

The plaintiff, Ronald Schroeder, is a prisoner in the Wisconsin prison system and was housed at the Redgranite Correctional Institution (RGCI) at all times relevant to this case. Defendant Doug Drankiewicz was employed by the Wisconsin Department of Corrections (DOC) as a probation/parole agent and defendant Karl Held was employed by the DOC as a corrections field supervisor. Defendant Held was defendant Drankiewicz's supervisor at all relevant times.

On March 6, 2008, the plaintiff was convicted of two counts of second degree sexual assault in Waukesha County Circuit Court, Case No. 2007-CF-496. The offenses involved the plaintiff's adult, live-in girlfriend. Defendant Drankiewicz interviewed the plaintiff on March 28, 2008, in order to compile a presentence investigation report (PSI). The same day, the plaintiff mailed a letter complaining about defendant Drankiewicz to the Wisconsin Department of Justice. The plaintiff's letter to Mark Banks at the Wisconsin Department of Justice stated in part: "during my meeting with Doug today, he said, 'I'm not buying anything you tell me. If you're not gonna admit to these things, you're gonna go to prison

---

[1] As a general matter, unless accompanied by citation, the relevant facts are taken from the parties' proposed findings of fact and affidavits which are not disputed. The court has included some information that may not be admissible at trial in its current form, but is undisputed for the purposes of summary judgment. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

- 3 -

for a long time.'" (Plaintiff's Motion for Partial Summary Judgment [Plaintiff's Motion] at 2.)[2]

On April 25, 2008, the plaintiff was sentenced by Waukesha County Circuit Court Judge J. Mac Davis. During the sentencing hearing, Judge Davis found, among other things, that:

> A balanced presentence investigation does dig through all the dirt; it also, however, looks for the good side, tries to evaluate the credibility of each side and do some comparison, comparing the credible on each side, which direction do we end up leaning as it relates to the offense and the potential sentencing.
>
> I agree with Mrs. Kuchler that in that fashion the Department of Corrections was unfair and didn't do their job properly because they produced an unbalanced result. Now if they'd interviewed them all and then discredited them for reasons and went with the conclusions they reached, that might have been a reasonable way to handle it. But we'll never find that out.

(Affidavit of Doug Drankiewicz [Drankiewicz Aff.], ¶ 6.) Judge Davis entered a Judgment of Conviction that specified, in part:

> The defendant is to have no contact with minors, except incidental and in a manner where he is supervised. An example of where he may have incidental contact is a workplace or family event. The Department of Corrections may not impose any of Extended Supervision conditions proposed on page 28 of the presentence investigation report without Court approval.

(Drankiewicz Aff., ¶ 8, Exh. A).

Following the sentence set forth in the Judgment of Conviction, defendant

---

[2] When the plaintiff filed his Motion for Partial Summary Judgment, he also filed a notarized affidavit stating "that the statements made in the attached Plaintiff's Motion for Partial Summary Judgment are true and correct." (Affidavit in Support of Plaintiff's Motion for Partial Summary Judgment at 1.) His motion included a section called "Undisputed Facts." The defendants treated the numbered paragraphs set forth in the "Undisputed Facts" section of the plaintiff's motion as the plaintiff's proposed findings of fact and responded to them. The court will do the same.

- 4 -

Drankiewicz was the plaintiff's probation/parole agent from April 25, 2008, until July 8, 2010. Six months after the Judgment of Conviction was entered, and while the plaintiff was incarcerated at RGCI, Captain Miller called defendant Drankiewicz and reported that the plaintiff wrote to David and Katie Schroeder requesting pictures of his minor daughters. Defendant Drankiewicz informed Captain Miller that it was his understanding that the plaintiff was not to have contact with any minors, including his daughters, until the plaintiff's risks and needs were more thoroughly evaluated.

On December 8, 2008, defendant Drankiewicz received another call from Captain Miller, who reported that the plaintiff attempted to send a card to his former wife and, inside the card, he had placed two cards addressed to his minor daughters. Defendant Drankiewicz consulted his supervisor, defendant Held, about the cards. Defendant Held had the same understanding of Judge Davis' April 2008 Judgment of Conviction as defendant Drankiewicz did.

Following his consultation with defendant Held, defendant Drankiewicz advised Captain Miller that the cards were not permitted under the April 2008 Judgment of Conviction. Captain Miller then told defendant Drankiewicz that he would be giving the plaintiff a conduct report for disobeying orders and for the unauthorized use of the mail. The plaintiff received this conduct report on December 12, 2008. In all of defendant Drankiewicz's contact with Captain Miller, he shared his opinion with Captain Miller based on the language in the Judgment of Conviction directing that the plaintiff have no contact with minors.

On December 8, 2008, the plaintiff wrote a letter to Judge Davis explaining that he was punished for attempting to have contact with his minor daughters, even though he

thought that he was allowed to contact his daughters. The plaintiff felt there was a misunderstanding as to what the April 2008 Judgment of Conviction meant and he asked Judge Davis for clarification.

Judge Davis held a hearing on January 7, 2009, to clarify the terms of the plaintiff's Judgment of Conviction. In that hearing, defendant Drankiewicz informed Judge Davis that he had shared with Captain Miller his understanding of the court's April 2008 Judgment of Conviction that the plaintiff was to have no contact with minors. Defendant Drankiewicz also told Judge Davis that the plaintiff was an untreated sex offender in denial who had child pornography charges dismissed, but read in, and that he did not think it was appropriate for the plaintiff to have contact with minors. Defendant Held also attended the hearing.

At the hearing, Judge Davis noted that the plaintiff's victim was an adult and that he believed there was no scientific correlation between sex offending against adults and risk to minors. Judge Davis stated that the plaintiff was permitted to send gifts and letters to his children's mother and that she could decide what would be shared with their children. The Judgment of Conviction was amended and states: "Defendant is authorized to send cards, letters, gifts to his children as long as it is sent to their Mother or Legal Guardian." (Drankiewicz Aff., ¶ 17, Exh. F). The Amended Judgment of Conviction also reiterates conditions set forth in the original Judgment of Conviction. The Amended Judgment still states that the plaintiff is "to have no contact with minors, except incidental and in a manner where he is supervised. An example of where he might have incidental contact is a workplace or family event." Id. Based on Judge Davis' ruling, RGCI authorities

returned the plaintiff's letter and cards on January 27, 2009, and permitted him to send the correspondence to his former wife.

A disciplinary hearing was held at RGCI on January 22, 2009, regarding the conduct report issued to the plaintiff on December 12, 2008. Neither defendant Drankiewicz nor defendant Held were involved in the RGCI disciplinary hearing in any manner. The RGCI hearing committee did not base their rulings on the no contact with minor children order originally ordered by the court. Rather, the hearing committee addressed whether the plaintiff concealed a letter within another letter and disobeyed an order, which are violations of Wis. Admin. Code §§ DOC 303.24 and 303.48. The plaintiff was found guilty of concealing a letter and disobeying an order and received a disposition of twenty hours of extra duty. The plaintiff appealed the decision, but the warden found that there was no basis for a change in the hearing committee's decision because the committee addressed only the issue of concealing a letter in another letter. The warden found the disposition of the conduct report to be appropriate.

On July 30, 2009, the plaintiff filed a Notice of Claim. The plaintiff avers that he submitted his Notice of Claim to the RGCI mail room with a written request to send it via United States Post Office Certified Mail. The prison sent it via first class mail, rather than by certified mail.

The plaintiff has submitted copies of e-mail messages exchanged between defendants Drankiewicz and Held in which they refer to him as "Silly" or "Mr. Silly." In the past, the plaintiff had performed under those names as a clown. On January 15, 2010, defendant Held wrote to defendant Drankiewicz: "One suggestion: despite his having used the name 'professionally', I'd avoid referring to him as "silly" in the future. We ain't heard

the last of him and were he to subpoena email or other documentation, referring to him by other than his legal name may be construed negatively by an impartial arbiter." (Plaintiff's Combined Brief in Opposition, Exh. 3).

The plaintiff's ex-wife stated on the record in Milwaukee County Circuit Court Case No. 2006-FA-7189 that she reads the plaintiff's correspondence to their daughters.

## **ANALYSIS**

## **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff filed a motion for partial summary judgment. According to the plaintiff, only his retaliation claim needs to proceed to trial; he asks for judgment on his other five claims. These include his remaining constitutional claims – his Fifth Amendment right to communicate with his daughters and his Fourteenth Amendment right to familial relations – and his three state law claims.

The plaintiff asserts that the defendants delayed his mail to his daughters and interfered with his relationship with them. He contends that the Judgment of Conviction prohibited the DOC from restricting his contact with his daughters and their mother. To support this contention, the plaintiff states that both the original Judgment of Conviction and the Amended Judgment of Conviction prohibit the DOC from imposing any of the Extended Supervision conditions proposed on page 28 of the presentence investigation report without court approval. According to the plaintiff, Page 28 of [his] PSI in the criminal action states, among other things, 'No contact with any minors' and 'No contact with . . .

Nichole J. Chafee . . . or their families without prior agent approval.'" (Affidavit of Ronald Schroeder [Schroeder Aff.] at 2).

The plaintiff also maintains that the defendants failed to investigate the entirety of the language in his Judgment of Conviction and, as a result, deprived him of his constitutional rights under the First and Fourteenth Amendments. He also asserts that the defendants tortiously interfered with Judge Davis' order, conspired to intentionally deprive him of his court-ordered rights, and negligently failed to investigate the court order before depriving him of his right to have supervised contact with his daughters. The defendants oppose the plaintiff's motion.

In moving for summary judgment, the defendants maintain that they did not violate the plaintiff's First Amendment rights and that the temporary delay in sending the plaintiff's cards to his daughters was insufficient to support a First Amendment claim as a matter of law. The defendants also dispute that their actions interfered with the plaintiff's constitutional right to maintain a relationship with his daughters while he was in prison. The defendants further maintain that, contrary to the plaintiff's contention, the undisputed facts establish that they did not retaliate against him. Finally, they contend that all of the plaintiff's state law claims fail because the plaintiff did not fully comply with the requirements of Wis. Stat. §893.82, Wisconsin's notice of claim statute.

The plaintiff's claims in this case are premised on his belief that Judge Davis "granted plaintiff supervised contact and expressly disallowed the DOC from restricting <u>all</u> contact with minors." (Plaintiff's Motion at 4.) The plaintiff submits that the defendants acted in contempt of the Judgment of Conviction when they restricted his contact with his daughters. As an initial matter then, the court must address the language of the Judgment

of Conviction, which governed the plaintiff's right to communicate with his daughters, and the defendants' actions.

A review of the undisputed facts will aid in the resolution of the issue before the court. The plaintiff was sentenced by Judge Davis on April 25, 2008. Although the judge was critical of the PSI and criticized the DOC on the record at sentencing, he entered a Judgment of Conviction which specified in part that the plaintiff was "to have no contact with minors, except incidental and in a manner where he is supervised. An example of where he may have incidental contact is a workplace or family event." (Drankiewicz Aff., ¶ 8, Exh. A). Additionally, the language in the Judgment of Conviction precluded the DOC from imposing Extended Supervision Conditions proposed on page 28 without court approval. Id.

Several months after the Judgment of Conviction was entered, defendant Drankiewicz responded to an inquiry from Captain Miller and advised him that it was defendant Drankiewicz's understanding that the plaintiff was not to have any contact with minors, including his daughters. In December 2008, Captain Miller called defendant Drankiewicz and told him that the plaintiff had attempted to send a card to his former wife and inside the card were two cards addressed to his minor daughters. After consulting with defendant Held, his superior, defendant Drankiewicz advised Captain Miller that both defendants agreed that the cards were not permitted under the 2008 Judgment of Conviction entered by Judge Davis. The plaintiff was issued a conduct report for disobeying an order and for unauthorized use of the mail. After a hearing, he was found guilty of the charges.

Subsequently, the plaintiff wrote to Judge Davis about what had occurred and requested clarification of the Judgment of Conviction. The judge held a hearing and entered an Amended Judgment of Conviction that included earlier provisions, but also stated: "Defendant is authorized to send cards, letters, gifts to his children as long as it is sent to their Mother or Legal Guardian." (Drankiewicz Aff., ¶ 17, Exh. F).

Contrary to the plaintiff's contention, the original Judgment of Conviction specifically stated that the plaintiff was "to have no contact with minors, except incidental and in a manner where he is supervised." (Drankiewicz Aff. ¶ 8, Exh. A). The Judgment gave examples of "incidental contact: "An example of where he may have incidental contact is a workplace or family event." Id. Sending cards addressed to minor children is not incidental contact. Nor was there any guarantee that the contact would be supervised, even though the cards were enclosed in a letter to the children's mother. These direct communications are totally unlike the "incidental" family event example stated in the Judgment of Conviction.

As noted, the original Judgment of Conviction also stated: "The Department of Corrections may not impose any of Extended Supervision conditions proposed on page 28 of the presentence investigation report without Court approval." Id. The full PSI is not in the record before this court, so it is unclear what particular conditions were proposed on page 28. However, this language does not specifically modify the direct "no contact with minors" language also set out in the same Judgment of Conviction. Additionally, the reference to Extended Supervision conditions applies to a person on Extended Supervision. The plaintiff was not on Extended Supervision during the time period relevant to this case. Rather, he was in prison at RGCI. Moreover, Judge Davis impliedly affirmed

that the defendants' understanding of the language in the original Judgment of Conviction was accurate when he held a hearing on January 7, 2009, and amended the Judgment of Conviction to add specific language allowing the defendant to have contact with his daughters under certain terms and conditions.

The plaintiff's contentions and the premise underlying his motion for partial summary judgment are not supported by the undisputed facts before the court. **ck** Accordingly, the plaintiff's motion will be denied.

Despite its conclusions with respect the Judgment of Conviction, the court briefly will address the remaining claims/grounds presented

**Retaliation**

The plaintiff claims that the defendants gave Captain Miller an unfavorable interpretation of the Judgment of Conviction because of complaints he lodged against the them with the DOC. To succeed on a First Amendment retaliation claim, the plaintiff must prove that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) a causal connection existed between the two. Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010).

The defendants concede the first and second elements for the purposes of summary judgment because the plaintiff filed a written complaint through the proper administrative channels and it can be reasonably inferred that the alleged retaliatory activities would deter a person of ordinary firmness from exercising the First Amendment activity in the future. See Bridges v. Gilbert, 557 F.3d 541, 551-52 (7th Cir. 2009).

Nevertheless, the defendants assert that the plaintiff's retaliation claim must fail because it is supported only by the temporal proximity between the protected activity and the adverse events that followed. They maintain that the plaintiff does not and cannot demonstrate that the protected speech was a motivating factor for any subsequent deprivation.

"Suspicious timing alone rarely is sufficient to create a triable issue. On summary judgment, in particular, it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact." Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 851 (7th Cir. 2008) (internal quotations and citations omitted). In this case, there is a lack of temporal proximity between the plaintiff's complaint submitted to the DOC on March 6, 2008, and the actions of defendants Drankiewicz and Held. Defendant Drankiewicz did not speak to Captain Miller about the language of the plaintiff's Judgment of Conviction until at least six months later, and then again nine months later, on December 8, 2008. Also, defendant Drankiewicz did not seek out Captain Miller. Rather, Captain Miller contacted him and defendant Drankiewicz communicated the information set out in the Judgment of Conviction.

As evidence of what he perceives as retaliatory animus against him, the plaintiff points to the e-mail messages in which the defendants refer to the plaintiff as "Silly" or "Mr. Silly." Although the defendants could have been more respectful of the plaintiff in their communications with each other, these e-mail messages were exchanged more than a year after Judge Davis amended the plaintiff's Judgment of Conviction and do not reveal the state of mind of the defendants when they were communicating with Captain Miller. Additionally, the fact that Judge Davis amended the Judgment of Conviction after the

January 2009 hearing to allow the plaintiff to contact his daughters leads to a reasonable conclusion that the original Judgment of Conviction did not allow such contact. All the defendants did was communicate the plain language of the Judgment of Conviction to Captain Miller. This does not constitute retaliation and, accordingly, the defendants are entitled to summary judgment on this claim.

**First Amendment Claim Re: Communication With Daughters**

The plaintiff was allowed to proceed on a claim under the First Amendment that his ability to send cards to his daughters was impeded. The defendants assert that the delay in sending the plaintiff's cards was temporary and, therefore, insufficient to support a First Amendment claim as a matter of law. They maintain that one isolated, short-term denial of mail cannot constitute a constitutional violation. They further contend that their discussion of the meaning of a court order with each other and Captain Miller furthered a legitimate government interest and did not violate the plaintiff's right to free speech.

The First Amendment's guarantee of freedom of speech provides protection from censorship of a prisoner's incoming and outgoing correspondence. Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)); Thornburgh v. Abbott, 490 U.S. 401 (1989). However, "the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." Procunier v. Martinez, 416 U.S. 396, 413-14 (1974), overruled on other grounds by Thornburgh, 490 U.S. at 413-14.

The plaintiff is not challenging a prison regulation or its application to him. Rather, he challenges the conclusion of defendants Drankiewicz and Held that the Judgment of Conviction precluded the plaintiff from sending cards to his minor daughters, as well as

defendant Drankiewicz's communication of that conclusion to Captain Miller. As previously discussed, the defendants did not draw a conclusion, they simply communicated the language of the Judgment of Conviction to Captain Miller. Accordingly, the defendants did not violate the plaintiff's First Amendment rights and are entitled to summary judgment on this claim.

**Fourteenth Amendment Claim Re: Familial Relations**

The plaintiff also was allowed to proceed on a claim under the Fourteenth Amendment that the defendants by their actions interfered with his constitutional right to maintain relationships with his daughters while he was in prison by their actions. The defendants disagree.

"[T]he Constitution protects certain kinds of highly personal relationships." Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984). However, many of the liberties and privileges enjoyed by citizens are surrendered when a person is in prison. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). At the Court explained, "freedom of association is one of the rights least compatible with incarceration. Id. (citing cases). "Some curtailment of that freedom must be expected in the prison context." Id.

Like his First Amendment claim, the defendants did not violate the plaintiff's rights under the Fourteenth Amendment. When questioned by Captain Miller, the defendants merely communicated the language of the original Judgment of Conviction to him. Moreover, "An inmate does not retain certain rights inconsistent with proper incarceration." Id. Although the plaintiff possesses the right to maintain familial relationships, an inmate does not retain certain rights that are inconsistent with proper incarceration. Id. In this case, the Judgment of Conviction precluded the plaintiff from contacting his minor

daughters. Moreover, what resulted was one isolated and relatively brief delay in the plaintiff's ability to send cards to his daughters. Accordingly, for the reasons stated herein, the defendants motion for summary judgment of this claim will be granted.

**State Law Claims**

The defendants contend that all of the plaintiff's state law claims fail because he did not fully comply with the requirements of Wis. Stat. § 893.82, Wisconsin's notice of claim statute. "Where the plaintiff has failed to comply with this notice of claim statute, the court lacks jurisdiction to hear the claim." Williams v. Nelson, 398 F. Supp. 2d 977, 992 (W.D. Wis. 2005) (quoting Saldivar v. Cadena, 622 F. Supp. 949, 959 (W.D. Wis. 1985)).

The parties agree that the plaintiff's notice of claim was filed via first class mail, rather than certified mail. The plaintiff states that when he submitted the Notice of Claim to the prison mail room, he requested that the Notice be sent by certified mail. The defendants argue that the plaintiff provided no documentary evidence to support his assertion and call the plaintiff's statement hearsay.

In his affidavit, the plaintiff avers that he submitted his Notice of Claim "to the Redgranite Correctional Institution's mailroom along with a written request to send the Notice of Claim via USPS certified mail." (Plaintiff's Affidavit, ¶1). This averment is made on personal knowledge, sets out facts that would be admissible in evidence and shows that the plaintiff is competent to testify on the matter. See Fed. R. Civ. P 56(e). Therefore, that averment is properly considered in deciding the motion for summary judgment.

Furthermore, the plaintiff had no choice but to hand over his Notice to prison authorities for mailing. That is one reason, the Court adopted the so-called "mailbox rule," which deems an appeal "filed" at the time it is delivered to prison authorities for forwarding.

Houston v. Lack, 487 U.S. 266, 268 (1988). Viewing the evidence in the light most favorable to the plaintiff, the court concludes that the plaintiff has complied with the requirements of the Wisconsin Notice of Claim statute.[3]

All of the plaintiff's state law claims against the defendants – tortious interference with a court order, conspiracy to intentionally deprive him of his court-ordered rights, and negligent failure to investigate the court order before depriving him of Fourteenth Amendment to familial relations – are grounded on his mistaken belief that the Judgment of Conviction permitted him to have contact with his daughters while he was incarcerated. The court has concluded that the Judgment of Conviction clearly stated that the plaintiff have "no contact with minors, except incidental and in a manner where he is supervised. An example of where he may have incidental contact is a workplace or family event." (Drankiewicz Aff., ¶ 8, Exh. A). The defendants merely communicated to Captain Miller this information which Judge Davis ordered and which was part of the Judgment of Conviction. Accordingly, the court concludes that the defendants are entitled to summary judgment on the plaintiff's state law claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for partial summary judgment be and hereby is **denied**. (Docket #20).

---

[3] The court has reviewed the plaintiff's notice of claim, which also contains a certificate of service section at the end. This certificate, which is not sworn, states: "The undersigned hereby certifies that the foregoing Notice of Claim, Pursuant to Section 893.82, Wis. Stats. was served on this 29th day of July 2009 via first class mail, postage pre-paid . . . ." (Affidavit of Betty Kruse, Exh. A.) The plaintiff's use of "via first class mail" in this certificate of service raises a question about his current affidavit. Nonetheless, as noted, the court must view the evidence in the light most favorable to the plaintiff.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment be and hereby is **granted**. (Docket #22).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of March, 2012.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge